IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PIZZA INN, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. CIV-23-00164-PRW |
| ALLEN'S DYNAMIC FOOD, INC. and | ) |
| FAWZI (ALLEN) ODETALLAH, | ) |
| | ) |
| Defendants. | ) |

# ORDER

Before the Court is Plaintiff Pizza Inn, Inc.'s Application for Preliminary Injunctive Relief (Dkt. 5) against Defendants Allen's Dynamic Food, Inc. and Fawzi (Allen) Odetallah. A hearing was set for April 18, 2023, but the Court granted the parties' joint motion (Dkt. 17) to strike the hearing and decide the preliminary injunction on the record as contained in the parties' briefs. For the reasons that follow, the Motion (Dkt. 5) is **GRANTED**.

## *Background*

This case arises out of disputes between Pizza Inn and two Pizza Inn franchisees, one operating in Ponca City, Oklahoma, and the other operating in McAlester, Oklahoma. Mr. Odetallah is the former franchisee of the Ponca City restaurant; Pizza Inn prevailed in a prior lawsuit in which this Court determined that Pizza Inn properly terminated the franchise agreement and that Mr. Odetallah continued operating the restaurant in breach of

1

the parties' agreement and in violation of federal trademark law.[1] Pizza Inn now alleges that despite the Court's prior ruling, Mr. Odetallah continues operating the Ponca City Pizza Inn to this day (nearly seven months later). And as to the McAlester restaurant, Pizza Inn alleges that it properly terminated the franchise agreement with franchisee Allen's Dynamic Food[2] and that it too has continued operating the McAlester restaurant in breach of the franchise agreement and in violation of federal trademark law. Accordingly, Pizza Inn seeks to enjoin Defendants from (1) operating the respective restaurants, (2) using Pizza Inn's trademarks in connection with the restaurants, and (3) selling pizza or Pizza Inn main menu items at either restaurant.

## *Findings of Fact*

Pizza Inn entered into two franchise agreements, one with Mr. Odetallah for a restaurant in Ponca City, Oklahoma, and the other with Allen's Dynamic Food for a restaurant in McAlester, Oklahoma.[3]

*The Ponca City Restaurant.* On July 2, 2007, Pizza Inn and Mr. Odetallah executed a transfer agreement under which Mr. Odetallah took over an existing Pizza Inn

---

[1] *Pizza Inn, Inc. v. Odetallah*, No. CIV-21-00322-PRW, 2022 WL 4473621 (W.D. Okla. Sept. 26, 2022), *appeal dismissed*, No. 22-6167, 2022 WL 19404932 (10th Cir. Dec. 6, 2022).

[2] Mr. Odetallah is the personal guarantor for Allen's Dynamic Food.

[3] At this stage, the Court makes factual findings based on an "evaluation of the salience and credibility of testimony, affidavits, and other evidence." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003). Because the parties requested that the Court decide the preliminary injunction on the briefs, the Court's decision is based on the evidence in the record as compiled by the parties.

franchisee's restaurant operations and franchise agreement for the Ponca City restaurant.[4] On the same day, Pizza Inn and Mr. Odetallah executed a new franchise agreement for a twenty-year operation term ("2007 Ponca City Franchise Agreement"),[5] but the transfer agreement acknowledged that the transaction was a transfer of rights and that the 2007 Ponca City Franchise Agreement's term would expire on June 30, 2009, "the same date as the term of the Original Franchise Agreement" with the previous franchisee.[6]

The 2007 Ponca City Franchise Agreement gave Mr. Odetallah the right to renew the agreement for an additional ten-year term after the expiration on June 30, 2009.[7] Mr. Odetallah exercised this right and executed a renewal agreement on July 1, 2009 ("Ponca City Renewal Agreement").[8] The Ponca City Renewal Agreement stated that the parties were to execute a new franchise agreement as part of this renewal and that the term of the new franchise agreement would expire on June 30, 2019.[9] The parties executed a new franchise agreement the same day ("2009 Ponca City Franchise Agreement").[10] Although the 2009 Ponca City Franchise Agreement provides for a twenty-year operation term, this term was limited by the Ponca City Renewal Agreement's ten-year term. Mr. Odetallah

---

[4] Ex. 2 (Dkt. 5).
[5] Ex. 3 (Dkt. 5).
[6] Ex. 2 (Dkt. 5), at 4.
[7] Ex. 3 (Dkt. 5), § 8.
[8] Ex. 4 (Dkt. 5).
[9] *Id.* at 3.
[10] Ex. 5 (Dkt. 5).

admits that he was permitted to operate the Ponca City restaurant only through June 30, 2019.[11]

On June 14, 2019, Pizza Inn's counsel sent a letter to Mr. Odetallah notifying him of his contractual obligation to cease operating the Ponca City restaurant upon expiration of the 2009 Ponca City Franchise Agreement.[12] But Mr. Odetallah continued operating the Ponca City restaurant after the agreement expired. Pizza Inn filed suit against Mr. Odetallah in the Eastern District of Texas, and when Mr. Odetallah filed Chapter 7 bankruptcy in the United States Bankruptcy Court for the Western District of Oklahoma, Pizza Inn became a creditor to Mr. Odetallah's bankruptcy.

The parties then reached a settlement agreement in July 2020.[13] Pursuant to the settlement agreement's terms, Mr. Odetallah was required to cease and desist (1) "any further use of the intellectual property owned by Pizza Inn" at the Ponca City restaurant within thirty days of the dismissal order and (2) "any further sales of pizza or other Pizza Inn main menu items and services" at the Ponca City restaurant within sixty days of the dismissal order.[14] Mr. Odetallah nonetheless continued operating the Ponca City restaurant as a Pizza Inn beyond the dates specified in the settlement agreement. On April 12, 2021, Pizza Inn filed suit in this Court for breach of the settlement agreement, breach of the franchise agreement, and trademark infringement.

---

[11] Defs.' Resp. (Dkt. 15), ¶ 7.
[12] Ex. 6 (Dkt. 5).
[13] Ex. 7 (Dkt. 5).
[14] *Id.*

During the pendency of that litigation, and because Mr. Odetallah continued operating the Ponca City restaurant, Pizza Inn took steps to unequivocally terminate the 2009 Ponca City Franchise Agreement (if any doubt existed about its natural expiration date). On February 28, 2022, Pizza Inn's counsel sent Mr. Odetallah a letter noting all deficiencies and defaults associated with his operation of the Ponca City restaurant.[15] This letter gave Mr. Odetallah the opportunity to cure these deficiencies and become a compliant franchisee. But when Odetallah failed to respond or cure the deficiencies, Pizza Inn terminated the franchise agreement by letter on April 13, 2022.[16]

In that lawsuit, this Court ruled that Pizza Inn properly terminated the 2009 Ponca City Franchise Agreement and that Mr. Odetallah's operation of the Ponca City restaurant past April 13, 2022, infringed Pizza Inn's trademarks and breached the franchise agreement.[17] The Court ultimately entered judgment for Pizza Inn on its breach-of-contract and trademark-infringement claims in the amount of $78,960.00.[18] But Mr. Odetallah was undeterred—despite this Court's ruling against him, he persisted in operating the Pizza Inn restaurant in Ponca City.

Pizza Inn's counsel sent a cease-and-desist letter to Mr. Odetallah on January 11, 2023, but after further correspondence agreed to allow him until February 5, 2023, to wind

---

[15] Ex. 8 (Dkt. 5).

[16] Ex. 9 (Dkt. 5).

[17] *Pizza Inn, Inc.*, 2022 WL 4473621.

[18] *Pizza Inn, Inc. v. Odetallah*, No. CIV-21-00322-PRW, 2022 WL 17475784, at *5 (W.D. Okla. Dec. 6, 2022).

up the business and cease operations at the Ponca City restaurant.[19] When Mr. Odetallah continued operating the Ponca City restaurant after the February 5 deadline, Pizza Inn filed this lawsuit and moved for a preliminary injunction against Mr. Odetallah.

*The McAlester Restaurant.* It is a similar story in McAlester. On September 25, 2007, Pizza Inn and Allen's Dynamic Food entered into a franchise agreement for the operation of a Pizza Inn-branded restaurant in McAlester ("McAlester Franchise Agreement"), with Mr. Odetallah signing as the personal guarantor.[20] On March 9, 2022, Pizza Inn's counsel sent Defendants a notice of deficiencies and demand for cure, outlining several deficiencies[21] and notifying Defendants that Pizza Inn would terminate the McAlester Franchise Agreement if the defaults were not cured within thirty days. Defendants neither responded to the letter nor cured the deficiencies. Pizza Inn thus terminated the McAlester Franchise Agreement by letter on April 13, 2022 (the same day it terminated the 2009 Ponca City Franchise Agreement).[22] Defendants continued operating the restaurant beyond that date.

Pizza Inn's counsel sent a cease-and-desist letter to Defendants on January 11, 2023, and just as with the Ponca City restaurant, Pizza Inn agreed to allow Defendants until February 5, 2023, to wind up the business and cease operations at the McAlester

---

[19] Exs. 12, 13 (Dkt. 5).

[20] Ex. 16 (Dkt. 5).

[21] Ex. 17 (Dkt. 5). These deficiencies are nearly identical to the deficiencies noted in the letter Pizza Inn sent to Mr. Odetallah concerning his operation of the Ponca City restaurant.

[22] Ex. 18 (Dkt. 5).

restaurant.[23] Defendants, however, continued operating the restaurant after February 5, prompting Pizza Inn to file this lawsuit and move for an injunction against Defendants.

## *Legal Standard*

The purpose of a preliminary injunction is "to enjoin, pending the outcome of the litigation, action that [the movant] claims is unlawful."[24] A preliminary injunction is an "extraordinary remedy" that is never "awarded as of right."[25] A party may be granted a preliminary injunction only when monetary or other traditional remedies are inadequate, and "the right to relief [is] clear and unequivocal."[26] The Court may enter a preliminary injunction if (1) Pizza Inn is substantially likely to succeed on the merits; (2) Pizza Inn will suffer irreparable injury if the injunction is denied; (3) Pizza Inn's threatened injury outweighs the injury Defendants will suffer under the injunction; and (4) the injunction would not be adverse to the public interest.[27] As the movant, it is Pizza Inn's burden to establish that each factor tips in its favor.[28] And because Pizza Inn's requested preliminary injunction would alter the status quo, Pizza Inn must make a "strong showing both with regard to the likelihood of success on the merits and with regard to the balance

---

[23] Exs. 12, 13 (Dkt. 5).

[24] *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 314 (1999).

[25] *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008).

[26] *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

[27] *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016).

[28] *Heideman*, 348 F.3d at 1188.

of the harms."[29]

## *Discussion*

*A. Likelihood of Success on the Merits.*

Pizza Inn has met its burden to establish that it is likely to succeed on the merits.[30] To succeed on the merits of its trademark-infringement claims, Pizza Inn must prove that "(1) its mark was used in commerce by [Defendants] without [Pizza Inn's] consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive."[31] In this context, to show an "unauthorized trademark," Pizza Inn must show that it "properly terminated the contract purporting to authorize the trademarks' use."[32] If Pizza Inn makes that showing, the Court "may presume that the unauthorized use was likely to cause confusion, or to cause mistake or to deceive."[33]

---

[29] *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 976–77 (10th Cir. 2004).

[30] Because Pizza Inn has met its preliminary-injunction burden as to the trademark-infringement claims, the Court does not separately address the related breach-of-contract claims.

[31] *See Burger King Corp. v. Mason*, 710 F.2d 1480, 1491 (11th Cir. 1983) (citing 15 U.S.C. § 1114(1)(a)); *see also S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 376 (3d Cir. 1992).

[32] *Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 2019 WL 3003679, at *32 (W.D. Okla. Mar. 22, 2019) (emphasis omitted).

[33] *See Sonic Indus., LLC v. Simple Tie Ventures, LP*, 2020 WL 4783917, at *4 (W.D. Okla. July 23, 2020).

*1. Pizza Inn properly terminated the franchise agreements.*

The Court finds that Pizza Inn "properly terminated the contract[s] purporting to authorize the trademarks' use."[34] As for the 2009 Ponca City Franchise Agreement, the Court decided in the prior lawsuit that Mr. Odetallah had defaulted on his contractual obligations by failing to pay royalty payments and that the April 13, 2022, termination letter rightfully terminated the franchise agreement.[35] That lawsuit "has been finally adjudicated on the merits," and Mr. Odetallah "had a full and fair opportunity to litigate the issue in the prior action."[36] Mr. Odetallah is thus precluded from relitigating that identical issue here.[37]

For the McAlester Franchise Agreement, Pizza Inn has established that Mr. Odetallah was similarly in default[38] and that the franchise agreement was properly terminated by letter on April 13, 2022. Defendants' sole argument that the McAlester Franchise Agreement was not properly terminated is that Pizza Inn failed to provide sixty-

---

[34] *Hetronic Int'l, Inc.*, 2019 WL 3003679, at *32.

[35] *Pizza Inn, Inc.*, 2022 WL 4473621, at *4.

[36] *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000) ("In this Circuit, application of collateral estoppel requires: (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.").

[37] *See Spradling v. City of Tulsa*, 198 F.3d 1219, 1222 (10th Cir. 2000).

[38] As mentioned above, the letter notifying Defendants of the deficiencies at the McAlester restaurant is nearly identical to the letter related to the Ponca City restaurant. Defendants generally deny the allegations contained in the McAlester letter, but they do not point to any evidence in the record to suggest that there were no deficiencies at the McAlester restaurant or that they cured the deficiencies before receiving the termination letter.

days' written notice as required under § 8.D of the agreement. But that section addresses *renewal* of the franchise agreement, not termination after default (which is addressed in § 12).

Under § 8.C, Defendants were to provide at least six-months' notice of their intent to renew for an additional ten-year term. Within sixty days of receiving that notice, Pizza Inn was to respond with reasons that could cause it to not grant renewal, such as any defaults or uncured deficiencies. Then, if Pizza Inn ultimately decided not to renew the agreement, § 8.D required Pizza Inn to give "written notice of its election not to *renew* this franchise at least 60 days prior to the *expiration* of the initial term of this Agreement."[39] Defendants impermissibly attempt to import the renewal section's sixty-day notice requirement into the termination provision in § 12, which contains no such limitation. The Court thus finds that Pizza Inn properly terminated the McAlester Franchise Agreement on April 13, 2022.

   2. *Pizza Inn is likely to succeed on its trademark-infringement claims.*

Pizza Inn has established that it is likely to succeed on the merits of its trademark-infringement claims. Again, to succeed on its trademark-infringement claims, Pizza Inn must prove that "(1) its mark was used in commerce by [Defendants] without [Pizza Inn's] consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive."[40]

---

[39] Ex. 16 (Dkt. 5), § 8.D (emphasis added).
[40] *See Mason*, 710 F.2d at 1491 (citing 15 U.S.C. § 1114(1)(a)); *see also S & R Corp.*, 968 F.2d at 376.

Pizza Inn has shown that, after properly terminating the franchise agreements, Defendants have continued using Pizza Inn's trademarks in commerce at both the Ponca City and McAlester restaurants. On February 8, 2023, Mike Burns (the Executive Vice President and Chief Operating Officer at Rave Restaurant Group, Inc., Pizza Inn's parent company) called the restaurants to place a pick-up order. Employees at both restaurants answered the phone as "Pizza Inn," and Mr. Burns ordered two large "Pepperoni Max" pizzas, Pizza Inn main menu items.[41] Defendants offer no rebuttal evidence in response. The Court thus finds that Defendants have used Pizza Inn's trademarks without authorization at the Ponca City and McAlester restaurants.

The Court "presume[s] that [Defendants'] unauthorized use [is] likely to cause confusion, or to cause mistake or to deceive."[42] "When a franchisee—who once had authorization becomes associated in the public mind with the licensor or franchisor—loses authorization but continues use of the franchisor's mark, the potential for consumer confusion is great because the public is fraudulently 'led to think that the ex-licensee is still connected with the licensor.'"[43] Because of this, "it is a well-settled doctrine that a terminated franchisee's continued use of its former franchisor's trademarks, by its very nature, constitutes trademark infringement."[44] Defendants do not address the likelihood-

---

[41] Ex. 1 (Dkt. 5), at 5, 7–8.

[42] *Simple Tie Ventures, LP*, 2020 WL 4783917, at *4.

[43] *IHOP Franchising, LLC v. Tabel*, 2014 WL 1767199, at *9 (D. Kan. Apr. 15, 2014) (quoting *7–Eleven, Inc. v. Spear*, 2011 WL 830069, at *5 (N.D. Ill. Mar. 3, 2011)).

[44] *Spear*, 2011 WL 830069, at *5.

of-confusion element or attempt to argue that Pizza Inn hasn't met its burden. Pizza Inn is therefore likely to succeed on its trademark-infringement claims.

B. *Irreparable Harm.*

Pizza Inn has met its burden to establish that it will suffer irreparable harm if the injunction is denied. This factor is satisfied by a movant demonstrating that there is a significant risk of harm that cannot be cured by monetary damages.[45] "To assess the significance of that risk, [courts] may consider the difficulty in calculating damages, the loss of a unique product, and existence of intangible harms such as loss of goodwill or competitive market position."[46] In addition to being irreparable, the harm must also be likely to occur before a decision on the merits can be rendered; mere speculative harm is not enough.[47]

In the context of trademark infringement, the Trademark Protection Act of 2020 ("TMA") created a rebuttable presumption of irreparable harm upon a finding of likelihood of success on the merits.[48] Under the TMA, "If the plaintiff's evidence does establish likely

---

[45] *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003). *Accord Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll. at Thunderhead Ranch*, 23 F.4th 1262, 1270 (10th Cir. 2022) ("For irreparable injury, the [movant] had to prove a significant risk of harm that couldn't be compensated after the fact.") (cleaned up).

[46] *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir. 2004) (cleaned up).

[47] *Winter*, 555 U.S. at 22.

[48] *See* 15 U.S.C. § 1116(A). Until recently, this was not the rule. Congress added this amendment to the Lanham Act through the TMA. Pub. L. No. 116-260, H.R. 133, 116th Cong. subtit. B, §§ 221–26 (2020). The provision was passed to remedy the impact on trademark cases of *eBay Inc. v. MercExchange*, 547 U.S. 388 (2006), where the Supreme Court held that there is no presumption of irreparable harm in patent-infringement cases.

trademark infringement, [the presumption] is triggered, and the burden of production shifts to the defendant to introduce evidence sufficient for a reasonable factfinder to conclude that the consumer confusion is unlikely to cause irreparable harm."[49] In this respect, the "presumption means the court assumes irreparable harm, even if the plaintiff has proffered nothing in support."[50] The focus then turns to the "defendant's evidence, and whether it is sufficient to rebut the . . . presumption."[51] If the defendant's evidence successfully rebuts the presumption, the burden then "returns to the plaintiff to point to evidence that irreparable harm is likely absent an injunction."[52] The court then applies traditional principles of equity to determine whether the plaintiff's evidence is sufficient to constitute irreparable harm.

Having concluded that Pizza Inn is likely to succeed on the merits of its trademark-infringement claim, the TMA's presumption applies, and the burden shifts to Defendants "to introduce evidence sufficient for a reasonable factfinder to conclude that the consumer confusion is unlikely to cause irreparable harm."[53] Defendants have not carried their burden. In their response to Pizza Inn's motion, Defendants offered *no* evidence concerning

---

*See* H.R. Rep. No. 116-645, at 16–19 (2020). Several lower courts had extended *eBay*'s rule to trademark-infringement actions. *See id.* (collecting cases).

[49] *Nichino America, Inc., v. Valent USA, LLC*, 44 F.4th 180, 186 (3d Cir. 2022).

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id*.

13

irreparable harm.[54] By failing to make even a "slight evidentiary showing," Defendants have not rebutted the TMA's presumption.[55] In this instance, therefore, the Court finds that a threat of irreparable harm exists.[56]

   C. *Balance of Harms.*

Pizza Inn has also met its burden to establish that Pizza Inn's threatened injury outweighs the injury Defendants will suffer under an injunction. This factor requires the Court to balance the harm that Defendants might suffer if the injunction were issued against the injury that would result to Pizza Inn if the injunction were denied. In trademark-infringement cases, the balance-of-harms analysis generally favors the trademark holder,[57] even where the injunctive relief might cause "substantial harm" to the infringer.[58] This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived."[59]

---

[54] Defendants argue that the prior lawsuit against Mr. Odetallah shows that Pizza Inn "can obtain an adequate remedy at law," so it "should not be allowed an extraordinary pre-judgment equitable remedy." Defs.' Resp. (Dkt. 15), at 6. But this argument cuts against Defendants: The fact that Mr. Odetallah continues operating the Ponca City restaurant—despite the Court having entered a monetary judgment in Pizza Inn's favor—shows that a remedy at law is not "adequate" and that an extraordinary remedy is indeed necessary.

[55] *See Nichino America, Inc.*, 44 F.4th at 186.

[56] *See, e.g.*, *Nintendo of Am., Inc. v. Storman*, 2021 WL 4772529, at *2 (C.D. Cal. Aug. 5, 2021); *see Nichino America, Inc.*, 44 F.4th at 186.

[57] *See Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587–88 (D.D.C. 1994).

[58] *ReBath LLC v. Foothills Serv. Sols. Co.*, 2021 WL 2352426, at *12 (D. Ariz. June 9, 2021) (collecting cases).

[59] *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992).

Defendants have not argued that they will suffer any harm under the injunction; indeed, their response doesn't even address the balance-of-harms prong. Further, any harm to Defendants is self-inflicted—a product of their own failure to comply with the franchise agreements and to cease operating the Pizza Inn restaurants after the agreements were terminated—and "courts afford little weight to self-inflicted harms when conducting the balancing inquiry."[60] The balance of harms thus favors Pizza Inn.

D. *Public Interest.*

Pizza Inn has also met its burden to establish that the injunction would not be adverse to the public interest. When a movant has established that it properly terminated a license agreement, defendants are then engaged in the unauthorized use of a trademark, and that unauthorized use risks deceiving consumers.[61] In such a case, "the public interest, which is often defined as the right of the public not to be deceived or confused, would be best served by injury of an injunction."[62] The only way to prevent public confusion or deception is to enjoin the offending party from using the mark. Otherwise, the offending

---

[60] *See Equitable Nat'l Life Ins. Co. v. AXA Equitable Life Ins. Co.*, 434 F. Supp. 3d 1227, 1255 (D. Utah 2020); *S & R Corp.*, 968 F.2d at 379 ("[Franchisee] is certainly harmed by the threat of loss of his franchise, but his self-inflicted harm is far outweighed by the immeasurable damage done [to the trademark holder] by the infringement of its trademark.").

[61] *See, e.g.*, *Church of Scientology Int'l v. Elmira Mission of Church of Scientology*, 794 F.2d 38, 44 (2d Cir. 1986); *Mason*, 710 F.2d at 1493; *United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 142 (3d Cir. 1981); *Simple Tie Ventures, LP*, 2020 WL 4783917, at *7 (finding an injunction in the public interest in a franchisee dispute similar to the case now before the Court); *IHOP Franchising, LLC*, 2014 WL 1767199, at *13.

[62] *Tsunami Softgoods, Inc. v. Tsunami International, Inc.*, 2001 WL 670926, at *6 (D. Utah Jan. 19, 2001).

party could continue holding itself out to the public as a licensee of the movant. The Court thus finds that the injunction would serve the public interest.

E. *Security.*

Finally, having concluded that all four preliminary-injunction factors weigh in Pizza Inn's favor, the Court must consider whether to require Pizza Inn to give a security.[63] Rule 65(c) of the Federal Rules of Civil Procedure provides that a preliminary injunction may issue "only if the movant gives security in an amount that the court considers proper." The purpose of a security is to protect the non-moving party against any harms incurred should it later be determined that the injunction was improper.[64] District courts have broad discretion in determining whether to require a movant to post a security and in setting the amount.[65] This is particularly so when the movant has substantial sources of revenue and the non-movant has made no showing that harm will likely occur in the absence of a security.[66] Based on the record compiled by the parties, and because Defendants have not

---

[63] *See* Fed. R. Civ. P. 65(c).

[64] *See* 11A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2954 (3d. ed. 2022).

[65] *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987) ("[A] trial court may, in the exercise of discretion, determine a bond is unnecessary to secure a preliminary injunction 'if there is an absence of proof showing a likelihood of harm.'") (quoting *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782 (10th Cir. 1964)); *Dominion Video Satellite, Inc.*, 269 F.3d at 1158.

[66] *Cf. Winnebago Tribe of Nebraska v. Stovall*, 216 F. Supp. 2d 1226, 1239–40 (D. Kan. 2002); *Coquina Oil Corp.*, 825 F.2d at 1462.

shown a likelihood of harm absent a security, the Court finds that a security is unnecessary.[67] The security requirement is thus waived.

## *Conclusion*

Pizza Inn has established (1) a likelihood of success on the merits; (2) irreparable harm; (3) that the harm to Pizza Inn outweighs the harm to Defendants; and (4) that an injunction would serve the public interest. Pizza Inn's Application for Preliminary Injunctive Relief (Dkt. 5) against Defendants is thus **GRANTED**. Accordingly, it is hereby **ORDERED** as follows:

A. Defendants, their officers, agents, servants, parents, subsidiaries, affiliates, attorneys, and employees, and those persons in active concert or participation with them, are enjoined from operating the Ponca City and McAlester restaurants as Pizza Inns, and more specifically are enjoined from:

   1. using the Pizza Inn marks or any trademark, service mark, trade dress, logo, or trade name that is confusingly similar to any of the Pizza Inn marks in connection with either the Ponca City or McAlester restaurants;

   2. otherwise infringing Pizza Inn's marks or using any similar designation, alone or in combination with any other components, in connection with either the Ponca City or McAlester restaurants;

   3. committing any other act that falsely represents or that has the effect of falsely representing that the goods and services of Defendants are licensed by, authorized by, offered by, produced by, sponsored by, or in any other way associated with Pizza Inn at either the Ponca City or McAlester restaurants;

   4. misrepresenting any of their products or services as those of Pizza Inn or Pizza Inn-authorized franchisees in connection with either the Ponca City or McAlester restaurants;

---

[67] *See id.*

5. causing a likelihood of confusion or misunderstanding as to their affiliation, connection, or association with Pizza Inn and Pizza Inn-authorized franchisees or any of Pizza Inn's products or services at either the Ponca City or McAlester restaurants; and

6. selling pizza or Pizza Inn main menu items at either the Ponca City or McAlester restaurants.

B. Defendants shall file with the Court and serve upon Pizza Inn's counsel, within ten (10) days hereof, a written report, under oath, setting forth in detail the manner in which they have complied with this order.

**IT IS SO ORDERED** this 19th day of April 2023.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE